# CHEATHAM *v.* COLLINS.

PATENTS; INTERFERENCE; APPEAL AND ERROR; OPERATIVENESS; REDUCTION
TO PRACTICE.

1. The question of operativeness must be regarded as settled, upon an appeal from a decision of the Commissioner of Patents in interference, where there was no motion to dissolve on the ground of inoperativeness, and each tribunal of the Patent Office to which it was presented as an incidental question has decided in favor of the junior party. (Citing *Duryea* v. *Rice*, 28 App. D. C. 423.)

2. A test is sufficient to establish reduction to practice in interference, where the device tested reasonably meets the requirements of the specifications, and the test demonstrates the efficiency and utility of the invention, though there are some minor mechanical defects afterwards cured by changes such as any skilled mechanic would make. (Citing *Burson* v. *Vozel*, 29 App. D. C. 388; *Pool* v. *Dunn*, 34 App. D. C. 132.)

3. Decisions of the Patent Office tribunals in interference, as to time of conception and diligence in reduction to practice, made after careful and fair review of the evidence, will not be disturbed by this court, on appeal, where it finds no error.

No. 927.  Patent Appeal.  Submitted November 11, 1914.  Decided January
4, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.    *Affirmed.*

The COURT in the opinion stated the facts as follows:

Robert V. Cheatham appeals from a decision of the Commissioner of Patents in an interference proceeding awarding priority to Roy V. Collins.  The issue of the interference is defined in the following counts:

"1. In a device of the class described, a trolley wire, a double solenoid, a controlling magnet, a movable conductor and

means for supporting the same adjacent to the trolley wire, a contact member which may be controlled by said controlling magnet, contacts in the double solenoid circuits which may be closed by the pressure of a trolley wheel on said movable conductor through one coil of the double solenoid, or by the combined action of the controlling magnet and trolley wheel through the other coil of the solenoid when the device is in use, so that when a motor current is shut off from the motors of a car one of the coils of the double solenoid will be energized and when the motor current is applied to the motors of a car the other coil of the double solenoid will be energized.

"2. In a device of the class described, a trolley wire, a movable insulated conductor and means for supporting the same adjacent to the trolley wire, a controlling magnet which is connected to the trolley wire and said movable conductor, a double solenoid adapted to operate the switch point and means actuated by the combined action of said controlling magnet and the movable conductor, or by the movable conductor alone, so that when a trolley wheel presses on this movable conductor, a circuit will be closed through one or the other of the coils of the double solenoid according to whether or not a motor current is drawn through the trolley wheel when on the movable conductor.

"3. A line contactor having a frame to be secured to a trolley wire, a trolley wheel engaging portion insulated from the frame, a trolley wheel engaging portion movable relative to the frame, a selector comprising electrically operated means having one terminal to be electrically connected to the supply wire and the other to the insulated portion whereby when current for operating the car is being drawn there through the electrical means will operate the selector to regulate the position of a contact and means operated by the movable portion to close a circuit.

"4. A line contactor having a frame, means for securing the frame to a trolley wire, a member insulated from the frame, a vertically movable member, a contact adapted to be mechanically operated by the last-mentioned member, an electrical means having one terminal electrically connected to the supply wire,

the other to the insulated member carried by the frame, and circuit controlling means comprising said electrical means."

The device covered by this issue is an automatic switch for street railways, which consists of an attachment to the trolley wire for engagement with the trolley wheel, and provided with devices for controlling a double solenoid connected with the switch point in such a manner that if the motorman approaches the switch with the current cut off at his controller the switch will be held or thrown so as to cause the car to move straight ahead, while if the controller remain with the current on the motors, the car will be switched to the branch track.

Collins, whose application was filed November 10, 1911, is the junior party. He alleges conception May 17, 1911, disclosure May 26, 1911, and actual reduction to practice July 24, 1911.

Cheatham filed June 22, 1911. He alleges conception June 15, 1911, and disclosure the same day, but disclaims actual reduction to practice. He has offered no evidence showing his conception, and he has therefore been confined to his filing date, June 22, 1911, for both conception and reduction to practice.

It appears that there has been an infringement suit pending between Cheatham and Collins in the district court of the United States for New York, involving a prior device of Collins, and the verdict in it was rendered against Collins, May 26, 1911, followed by judgment May 30, 1911. Apprehending an adverse decision Collins, who was the engineer of the Automatic Switch Company, undertook the invention of another device which would not infringe Cheatham's patent. He made a drawing of the invention of the issue which he submitted and explained to his counsel, who advised a speedy development. With diligence he went to work, completing his drawings, which, when completed on June 13, 1911, he submitted to his counsel, who advised the construction of the device. After completing working drawings, he built a device which was tested on the line of the Brooklyn Street Car Company and found to operate satisfactorily at a junction where many cars were switched. This construction contained the

elements of the issue.   Certain mechanical improvements were made, and it is admitted by Cheatham that the device operated properly on July 29, 1911.

*Mr. O. Ellery Edwards, Jr.,* and *Mr. Howard A. Coombs* for the appellant.

*Mr. Alfred W. Kiddle, Mr. Wylie C. Margeson,* and *Mr. Edwin A. Packard* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The tribunals of the Patent Office agreed that Collins was at least entitled to June 13, 1911, as his date of conception, and that he exercised due diligence in reducing to practice. The contention of Cheatham, who has appealed, is that the structure conceived by Collins prior to July 29, 1911, was in-operative and that he should be limited to that date for his conception.   There was no motion to dissolve on the ground of inoperativeness, and each tribunal of the Patent Office to which it was presented as an incidental question has decided in favor of Collins.   The question of inoperativeness must be regarded as settled.   *Duryea* v. *Rice,* 28 App. D. C. 423, 431.

It is apparent from the evidence that the drawings of Col-lins were embodied in a construction that was tested upon cars in Brooklyn on July 24 and 25, 1911.   While the test was sufficient to demonstrate the efficiency and utility of the inven-tion, there were some minor mechanical defects which were afterwards cured.   The device reasonably met the requirements of the specifications, and the changes afterwards were such as any skilled mechanic would have made to remove the minor defects in operation.   *Burson* v. *Vogel,* 29 App. D. C. 388, 394; *Pool* v. *Dunn,* 34 App. D. C. 132, 137.

The evidence on behalf of Collins is carefully and fairly reviewed in the decisions of the Patent Office tribunals, who concluded that he had conceived the invention at least as early

as June 13, 1911, and had been diligent in reducing to practice before Cheatham's application was filed.

We find no error, and being fully satisfied with their conclusions, the decision is affirmed.

The clerk will certify this decision to the Commissioner of Patents as required by law.                    *Affirmed.*